**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) |
| | ) CIVIL ACTION NO.  5:23-cv-01210 |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) C O M P L A I N T |
| | ) |
| **NATIONAL TELECOMMUTING INSTITUTE, INC.,** | ) |
| | ) |
| | ) JURY TRIAL DEMAND |
| **Defendant.** | ) |

## <u>NATURE OF THE ACTION</u>

This is an action under Title I and Title V of the Americans with Disabilities Act of 1990, as  amended ("ADA"), and Title I of the Civil Rights Act  of 1991, to correct unlawful employment practices on the basis of disability and to provide  appropriate relief to Charging Parties and to similarly aggrieved individuals, all of whom are blind or have low-vision and sought employment through National Telecommuting Institute, Inc. d/b/a NTI ("Defendant" or "NTI"). The Charging Parties and the similarly aggrieved individuals are collectively referred to herein as the "Aggrieved Individuals."

As alleged with greater particularity in paragraphs 14-48 below, the Equal  Employment Opportunity Commission ("the Commission") alleges that Defendant discriminated against Aggrieved Individuals in violation of the ADA by failing or refusing to place or refer them for employment and limiting and classifying them because they are disabled and use assistive technology such as screen readers and screen enlargers over 2X magnification. The Commission further alleges that Defendant failed or refused to provide Aggrieved Individuals with reasonable

accommodations needed to be able to participate in Defendant's pre-placement application process, thereby denying them consideration and opportunities for employment.

## JURISDICTION AND VENUE

1.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706 of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      Venue is proper in the United States District Court for the Western District of Texas as the employment practices alleged to be unlawful were committed throughout the United States, including within Bexar County, Texas. *See* 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3.      The Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Section 706 of Title VII, 42 U.S.C. § 2000e-5, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4.      Defendant is a Massachusetts corporation headquartered in Massachusetts, which recruits and places employees across the United States, including in San Antonio, Texas.

5.      Defendant has continuously had at least fifteen (15) employees during all periods relevant to this action.

6.      At all relevant times, Defendant has continuously been an employer engaged in an

2

industry affecting commerce under Sections 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g), (h).

7.      At all relevant times, Defendant has continuously been a covered entity under Section 101(2) of the ADA, 42 U.S.C. Section 12111(2).

## ADMINISTRATIVE PROCEDURES

8.      More than thirty days prior to the institution of this lawsuit, Charging Parties Shane Keller and Roger Sullivan filed  Charges of Discrimination with the Commission alleging violations of the ADA by Defendant.

9.      On June 30, 2023, the Commission issued to Defendant two Letters of Determination  finding reasonable cause to believe that the Defendant violated the ADA and inviting Defendant  to join with the Commission in informal methods of conciliation to endeavor to eliminate the  unlawful employment practices and provide appropriate relief.

10.     The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

11.     The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.     On or about August 25, 2023, the Commission issued to Defendant Notices of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

13.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14.     Each Aggrieved Individual is blind or has low vision.

3

15.     Each Aggrieved Individual is substantially limited in major life activities, including but not limited to seeing.

16.     Each Aggrieved Individual was an applicant for placement by Defendant for positions as phone-based customer service agents.

17.     Each Aggrieved Individual satisfies the minimum qualifications for placement by Defendant.

18.     Each Aggrieved Individual is a qualified individual with a disability who can perform the essential functions of the position with or without reasonable accommodation.

19.     Defendant is a staffing and job placement agency based in Westwood, Massachusetts that assists individuals with disabilities to find work-at-home jobs.

20.     Defendant works primarily to place applicants in phone-based customer service positions.

21.     In some instances, Defendant serves as the liaison referring applicants to employers, while in other instances, Defendant adds applicants to its own payroll while they perform work for Defendant's client-employers.

22.     NTI participates in the federal AbilityOne Program authorized by the Javitz Wagner O'Day Act, ("JWOD"), 41 U.S.C. § 46 et seq., which requires that at least 75% of all labor must be performed by individuals with disabilities.

23.     Defendant's clients are companies who seek to hire individuals with disabilities, primarily in telephonic customer service positions. Among NTI's current and former clients are a large insurance company, major retailers, and the United States Internal Revenue Service.

24.     As part of its services, Defendant administers skills testing (such as typing tests) and provides applicants with professionalism courses and mentorship.

25.     Applicants register with Defendant, and Defendant works to match qualified registrants with prospective employers.

26.     Defendant administers an authorized Social Security Administration Employment Network program. It assists applicants with skills training, job coaching, and referral or placement for at-home customer service positions with its client-employers.

27.     The first step for an interested applicant is to register with Defendant.

28.     As recently as May 1, 2023, the "FAQ" section of Defendant's website stated: "Q: What if I need special accommodation to work, even from home? A: For now, the jobs available cannot accommodate screen enlargers over 2X magnification, screen readers such as JAWS, voice recognition software such as Dragon Speak, or relay services."

29.     Following registration, applicants complete a video assessment and a typing test. Defendant reviews each video assessment and typing test and provides suggestions for applicants' next steps in Defendant's process, which may include completing online skills workshops offered by Defendant.

30.     Applicants are not allowed access to Defendant's job board to apply for positions with its client-employers unless Defendant has determined they are eligible for placement.

31.     As a general practice, Defendant does not place or refer for employment individuals who are blind or low vision who use screen readers or screen enlargers over 2X magnification. Instead, it classifies them as applicants for "Future Consideration."

32.     Upon learning during the registration process that an applicant uses screen readers or screen enlargers over 2X magnification, Defendant's practice is to read applicants a script stating that no positions are available for individuals who use such assistive technology, that their

status with Defendant will be set to "Future Consideration," and that they will be contacted by Defendant should any compatible positions become available.

33. Applicants who are blind or low vision who use screen readers or screen enlargers over 2X magnification are then precluded by Defendant from applying or being considered for any of the jobs available with Defendant's client-employers.

34. As a general practice, prior to summer 2023, Defendant did not contact those applicants who were categorized as "Future Consideration" to fill telephonic customer service positions available to Defendant's wider applicant pool.

35. Despite the abovementioned representations to Aggrieved Individuals, many of Defendant's client-employers are willing to accommodate Aggrieved Individuals in telephonic customer support roles. Moreover, Defendant has not taken sufficient action to identify its client-employers' ability to provide accommodations for Aggrieved Individuals.

36. Charging Party Shane Keller, formerly Shane Hecker, registered with Defendant in 2017. Mr. Keller is blind and uses JAWS ("Job Access with Speech") to convert computer text to synthetic speech.

37. When applying for employment through NTI, Mr. Keller inquired whether Defendant had any jobs available that he could perform while using JAWS, one of the most widely used screen reader programs.

38. On February 17, 2017, Defendant's recruiting department emailed Mr. Keller stating that it did not have any positions available for individuals who use screen reader software or who require more than 2x magnification.

39. Defendant did not permit Mr. Keller to complete Defendant's onboarding process nor seek referral or placement for positions with its client-employers.

40.     Charging Party Roger Sullivan registered with Defendant in Spring of 2020. Like Mr. Keller, Mr. Sullivan is blind and uses JAWS to convert computer text to synthetic speech.

41.     During a June 26, 2020, phone call, a representative for Defendant informed Mr. Sullivan that there were no positions available for him because no software Mr. Sullivan would be required to use in any available position would be compatible with his screen reader program.

42.     Defendant also failed to accommodate Mr. Sullivan to allow him to complete a mandatory typing test and skills assessment after he communicated to Defendant that the testing software was not compatible with his assistive technology software.

43.     Like Mr. Sullivan, as a result of Defendant's failures to accommodate, Aggrieved Individuals who required a reasonable accommodation were unable to complete preliminary skills assessments. Defendant then marked Aggrieved Individuals ineligible for referral or placement due to their failure to complete required trainings.

44.     Upon receipt of requests for accommodation from applicants during these required initial processes, Defendant failed or refused to engage in the interactive process or offer reasonable accommodations that would have allowed applicants to complete the application process.

45.     Defendant discriminated against a class of Aggrieved Individuals by denying them employment opportunities based on their potential need for reasonable accommodations.

46.     Defendant violated the ADA by discriminating against a class of Aggrieved Individuals when it failed or refused to accommodate them in response to requests for reasonable accommodation during Defendant's own registration, preliminary skills assessment, and training processes, resulting in their inability to complete Defendant's pre-placement requirements.

47.     Defendant violated the ADA by discriminating against a class of Aggrieved

Individuals when it failed or refused to place or refer Aggrieved Individuals who sought placement for employment for the period from March 15, 2017, to the present.

48.     Defendant violated the ADA by discriminating against a class of Aggrieved Individuals when it limited, segregated, or classified applicants who are blind or low vision who use screen readers or screen enlargers over 2X magnification who sought placement for employment for the period from March 15, 2017, to the present to the status of "Future Consideration."

49.     The unlawful employment practices complained of in paragraphs 14-48 above were intentional.

50.     The unlawful employment practices complained of in paragraphs 14-48 above were done with malice or with reckless indifference to the federally protected rights of the Aggrieved Individuals.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against any qualified employees, because of their disability, by engaging in any employment practice which discriminates on the basis of disability;

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

C.     Order Defendant to make whole Aggrieved Individuals who were adversely affected by Defendant's discriminatory conduct, by providing appropriate back pay with

prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

      D.     Order Defendant to make Aggrieved Individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 14-48 above, in amounts to be determined at trial;

      E.     Order Defendant to make whole Aggrieved Individuals by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described in paragraphs 14-48 above, including but not limited to, humiliation, emotional pain and suffering, stress, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial;

      F.     Order Defendant to pay Aggrieved Individuals punitive damages for its malicious and/or reckless conduct as described in paragraphs 14-48 above, in amounts to be determined at trial;

      G.     Grant such further relief as the Court deems necessary and proper in the public interest; and

      H.     Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

*/s/ Robert A. Canino*
ROBERT A. CANINO

Regional Attorney
Okla. Bar No. 011782
Email: robert.canino@eeoc.gov

SUZANNE ANDERSON
Assistant Regional Attorney
Texas Bar No. 14009470
Email: suzanne.anderson@eeoc.gov

*/s/ Alexa Lang*
ALEXA LANG
Trial Attorney
Texas Bar No: 24105356
Email: alexa.lang@eeoc.gov

*/s/ Philip Moss*
PHILIP MOSS
Trial Attorney
Texas State Bar No. 24074764
Email: philip.moss@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
San Antonio Field Office
5410 Fredericksburg Rd., Suite 200
San Antonio, Texas 78229-3555
Telephone: (210) 640-7570
Facsimile: (210) 281-7669

**ATTORNEYS FOR PLAINTIFF**