IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff<br><br>v.<br><br>NATIONAL TELECOMMUTING INSTITUTE, INC.,<br><br>Defendant. | §§§§§§§§§§§§<br><br>NO. 5:23-cv-01210-XR |

### DEFENDANT'S RULE 12(e) MOTION FOR MORE DEFINITE STATEMENT

Defendant National Telecommuting Institute, Inc. ("NTI" or "Defendant"), by and through its undersigned attorneys, files its Motion for More Definite Statement under Rule 12(e) of the Federal Rules of Civil Procedure, requesting the Court order Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") to replead the allegations in its Complaint to more specifically define the proposed class of allegedly "similarly aggrieved individuals." In support of its Motion, Defendant would respectfully show the Court as follows:

### I. INTRODUCTION

Defendant is a 501(c)(3) not-for-profit organization based in Boston, Massachusetts that serves people with disabilities who prefer or require work-at-home employment settings. Established in 1995, NTI's core purpose is to assist individuals with severe disabilities find work-at-home jobs. NTI's works with its employer-clients, who are employers who seek to hire disabled individuals. Individuals may register for services with NTI, and NTI works to match qualified registrants with suitable opportunities, so those registrants may apply for employment with NTI's employer-clients.

NTI@Home is one of NTI's job placement programs and is an authorized Social Security Administration Employment Network program. The mission of NTI@Home is to train and assist people with disabilities and those who care for them to get work-from-home call center jobs with NTI's employer-clients. In this way, NTI works as the functional equivalent of a non-profit Professional Employer Organization, or PEO. NTI@Home's no-charge services for individuals with disabilities include job placement, skills training, and job coaching. Registering for these services does not obligate any individual to apply for, or accept, any employment opportunity.

NTI@Home offers job services to anyone who has a physical disability or mental health impairment, including individuals with visual impairments. With respect to individuals with visual impairments, those who require screen magnification of two times or less can perform virtually all of the jobs available through NTI@Home's employer-clients, assuming they have the requisite skills and experience. Matching visually impaired applicants who use screen reading technology or require more than two times magnification presents a challenge because many of NTI@Home's employer-clients do not have software capabilities that allow for the use of that technology.

On September 27, 2023, Plaintiff filed its Original Complaint alleging violations of the Americans with Disabilities Act of 1990, as amended, and the Civil Rights Act of 1991, on behalf of Charging Parties, Shane Keller and Roger Sullivan, and "similarly aggrieved individuals." ECF No. 1 at 1. The Complaint provides no factual detail related to who these purportedly similarly aggrieved individuals are.

This lawsuit presents an existential threat for NTI.  NTI was founded with the mission of assisting *all* differently abled individuals to find employment. NTI's commitment to this mission has never faltered. This is evidenced by, among other things, NTI's placement success rates, including significant numbers of blind and visually impaired individuals who have registered for

services through NTI and have obtained employment through NTI's employer-clients. The relief sought by Plaintiff, would most certainly lead to the demise of Defendant and its almost thirty-year quest to provide employment opportunities for all members of the disabled community.

## II. ARGUMENT AND AUTHORITIES

Plaintiff should be ordered to amend its Complaint to provide a more definitive statement that will allow Defendant to prepare a complete response. Specifically, the Complaint refers generally to "Aggrieved Individuals," but the term is not defined with the requisite level of specificity for Defendant to identify and properly respond to the allegations concerning those individuals. Defendant's answer, simultaneously filed herewith, makes clear that it cannot admit or deny certain allegations contained in the Complaint due to Plaintiff's failure to articulate with sufficient specificity the class of purportedly similarly aggrieved individuals Plaintiff claims to represent. Defendant's Rule 12(e) Motion therefore should be granted.

### A.     Legal Standard.

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Although Rule 12(e) motions are generally disfavored, they are the appropriate vehicle by which to address unintelligibility and incoherence in pleadings. *Bautista v. SWBC Pro. Emp. Servs. I, LLC*, No. SA-22-CV-00247-XR, 2022 WL 2118380, at *2 (W.D. Tex. June 13, 2022) (citations omitted). "[T]o determine whether a Rule 12(e) motion should be granted, the Court need only assess whether the complaint is one to which the defendant could reasonably prepare a responsive pleading." *Id.* (citing *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)).

### B. Plaintiff's Definition of the Proposed Putative Class Is So Broad and Ambiguous that Defendant Cannot Reasonably Respond.

The Complaint is brought on behalf of the Charging Parties and other "Aggrieved Individuals," who are defined as "similarly aggrieved individuals, all of whom are blind or have low-vision and sought employment through [NTI]." ECF No. at 1. Based on this vague and conclusory description of the proposed class of similarly situated individuals, Defendant cannot reasonably prepare a response, and instead is left to guess which allegedly aggrieved individuals fall in the proposed class.

Plaintiff states that putative class is made up of individuals who are "blind or low vision." As outlined above and acknowledged in Plaintiff's Complaint, NTI's services are not completely inaccessible to individuals who are blind or have low vision. *See, e.g.*, ECF No. 1 ¶ 31 (acknowledging NTI can accommodate visual impairments when the registrant requests two times magnification or less).[1] Because the class definition does not specify the level of visual impairment aggrieved individuals possess, the putative class as defined would include visually impaired applicants who request or require two times magnification or less and were actually placed by NTI into employment opportunities. By defining the putative class members so broadly, NTI cannot reasonably identify the individuals Plaintiff purports to represent.

Similarly, the Complaint defines "Aggrieved Individuals" as all individuals who "sought employment through NTI." *Id.* at 1. This definition does not specify the particular NTI program through which the individuals sought employment. For example, Charging Parties participated in the NTI@Home program. But the broadly defined proposed class may also include individuals who used other NTI job placement services such as LandAjob, interacted with NTI through other

---

[1] NTI disputes some of the allegations in Paragraph 31 of the Complaint, and refers the Court to those allegations for purposes of this Motion to illustrate that Plaintiff acknowledges at least some applicants with visual impairments can be accommodated by NTI's employer-clients.

partnerships with its employer-clients, or applied to work directly for NTI itself. This issue is compounded by Plaintiff's obfuscation of the difference between an individual who registers for services through a program like NTI@Home (and is under no obligation whatsoever to apply for any employment opportunity) with an individual who actually applies for a job with one of NTI's employer-clients or NTI itself. *See, e.g.*, *Id.* ¶ 27 (characterizing someone who merely registers for NTI's services as "an interested applicant").

Plaintiff fails to specify even the most basic information about the individuals it purports to represent, including the dates on which they may have registered for services or applied for jobs, the program or programs they registered to use, the employer-clients they applied to work for, if any (or whether they applied to work for NTI directly), or where the individuals are located. In other words, the putative class as defined encompasses any individual with any level of visual impairment that attempted to register, or actually registered, for services under any NTI program, or applied to work directly for NTI or one of its employer-clients, regardless of whether that individual ever actually applied for a job or eventually obtained a job placement, conceivably within the totality of NTI's almost 30 years serving this population, apparently limited only by the statute of limitations.[2]

Class action allegations must be specifically definite to allow a defendant to admit or deny them in good faith. *See Richardson v. Rite Aid Corp.*, No. 2:09-CV-1902-AKK, 2010 WL 11562060, at *2 (N.D. Ala. Mar. 9, 2010) ("An alleged collective class action must define the purported members of the alleged class to allow a defendant to admit or deny the allegations of the complaint in good faith."); *see also Woodward v. FedEx Freight East, Inc.*, 250 F.R.D. 178,

---

[2] Via its simultaneously filed Rule 12(b)(6) Partial Motion to Dismiss, Defendant seeks to limit the applicable limitations period to October 29, 2021, which is 300 days before Plaintiff gave Defendant notice of its intent to expand the scope of its investigation on August 25, 2022.

192 (M.D.Pa. 2008) (granting defendant's motion for more definite statement because the proposed collective action group was defined as "all current and former Fed Ex Freight employees denied overtime compensation," which afforded the defendant no basis to compose a responsive pleading); *Wallace v. Chevron Oronite Co., L.L.C.*, No. 07-0574, 2007 WL 1747004, at *2 (E.D. La. June 14, 2007) (granting motion for more definite statement where plaintiffs' allegations were insufficient to put Defendants on notice of their class action allegations).

At a minimum, Plaintiff should be ordered to re-plead to specify the level of visual impairment "Aggrieved Individuals" possess, the program or programs for which they registered for services, if any, and the employer-client or employer-clients with whom they sought employment. *See, e.g.*, *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 234 (D.N.J. 2003) (granting motion for more definite statement in Title III ADA case in which plaintiffs' counsel admitted "that approximately 150 McDonald's restaurants had been visited and that alleged ADA problems were found to exist at only approximately one third of them, yet the amended complaint makes no allowance for non-offending restaurants").

*Clark* is instructive here, as it rejects plaintiffs' "shotgun" approach to their pleading, which the court opined "does not discriminate between the restaurants known to be in violation of the ADA from those which are not, and which, among the restaurants known to be in violation, does not discriminate between architectural barriers known to exist from those which are not." *Id.* This "shotgun" approach left defendants only to guess at which of its almost 3,000 restaurants were alleged to violate the ADA and how so. *Id.* A similar issue is present in Plaintiff's Complaint—without knowing more about the level of visual impairment and the program or programs at issue, NTI is left only to guess at the members of the class of individuals it is alleged to have discriminated against. NTI's Motion accordingly should be granted.

## III. CONCLUSION

Based on the foregoing, Defendant National Telecommuting Institute, Inc. respectfully requests that the Court grant its Motion and order Plaintiff to replead and file an amended complaint clearly setting forth sufficient factual detail concerning the class of proposed similarly situated individuals to which Defendant is expected to respond and award Defendants all further and additional relief to which they are entitled.

Date:   November 27, 2023

Respectfully submitted,

 /s/ Nicole S. LeFave
Jeremy W. Hawpe, TX Bar No. 24046041
jhawpe@littler.com
LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201
T: 214.880.8100
F: 214.880.0181

Nicole S. LeFave, TX Bar No. 24085432
nlefave@littler.com
Emily R. Linn, TX Bar No. 24109478
elinn@littler.com
LITTLER MENDELSON, P.C.
100 Congress Avenue, Suite 1400
Austin, TX  78701
T: 512.982.7250
F: 512.982.7248

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I, Nicole S. LeFave, hereby certify that on November 27, 2023, a true copy of the foregoing document was filed through the ECF system and will be served electronically to all registered participants as identified on the Notice of Electronic Filing, or via email to all non-registered participants.

        */s/ Nicole S. LaFave*
        Nicole S. LeFave