IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 5:23-cv-01210-XR ) |
| NATIONAL TELECOMMUTING INSTITUTE, INC., | ) ) ) |
| Defendant. | ) |

**THE NATIONAL FEDERATION OF THE BLIND'S**
**REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Roger Sullivan and the National Federation of the Blind ("NFB) (collectively, "Movants") move to intervene in this action to challenge the National Telecommuting Institute, Inc. d/b/a NTI's ("NTI") discriminatory practices against individuals who are blind or have low vision. NTI does not oppose the Movants' motion as to Mr. Sullivan or the timeliness of their motion. Nor does NTI dispute its practices, which the Movants and the Equal Employment Opportunity Commission ("EEOC") have alleged are discriminatory. Instead, NTI argues that the NFB should not be permitted to intervene because the NFB cannot satisfy all of the requirements of mandatory and/or permissive intervention. As detailed below, NTI's arguments are meritless.

ARGUMENT

I.      **The NFB, as a Charging Party, has an unconditional right to intervene.**

Pursuant to Rule 24(a)(1), a charging party has an unconditional right to intervene in an EEOC action that is based on that party's administrative charge. *EEOC v. Federal Exp. Corp.*,

558 F.3d 842, 849 (9th Cir. 2009) ("[T]he EEOC may then bring a civil action against the employer, 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.27, in which the charging party may intervene as a matter of right, 42 U.S.C. § 2000e-5(f)(1)."); s*ee also Jones v. Bell Helicopter Co., a Subsidiary Div. of Textron, Inc.*, No. CA 4-77-137, 1977 WL 15349, at *1 (N.D. Tex. Dec. 23, 1977) (similar); *Truvillion v. King's Daughters Hosp.*, 614 F.2d 520, 525 (5th Cir. 1980) (similar). The NFB, as a Charging Party, has an unconditional right to intervene in this case.

NTI does not, because it cannot, dispute that charging parties may intervene in lawsuits brought by the EEOC as a matter of right. Instead, it argues that the NFB has an "attenuated connection" to this lawsuit (and therefore has no unconditional right to intervene) because it has identified only two members who have been subjected to NTI's unlawful practices—Roger Sullivan and Maryann Murad. Def. Resp. at 6. There is no threshold requirement for the number of aggrieved members an organization must have to have a "connection" to a lawsuit. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 556–57 (5th Cir. 1996) (finding an affidavit from one organization member detailing a past injury sufficient); *United States v. Texas*, No. 6:71-CV-5281-WWJ, 2006 WL 8441616, at *4 (E.D. Tex. 2006) (finding standing where "at least one of the [plaintiff-intervenors] organizations' members would have standing to sue on his or her own"). Two aggrieved NFB members are two too many and they provide a direct and sufficient connection between the NFB and this lawsuit.[1]

NTI also assumes that the EEOC does not view the NFB as an "aggrieved person" (with an unconditional right to intervene) because the EEOC did not bring suit on the NFB's behalf. Def. Resp. at 6. Neither NTI nor the NFB can speak to the veracity of that assumption—only the

---

[1] If permitted to intervene, through discovery, the NFB would likely identify additional members who have been subjected to NTI's discriminatory practices.

EEOC can. However, it is apparent that the EEOC views the NFB as a Charging Party, *see, e.g.*, Ex. D to Def. Resp. at 1 (EEOC referring to the NFB as a "Charging Part[y]"); Mr. Sullivan—a member of the NFB—as an aggrieved individual; and, having agreed to the NFB's intervention in this case, the NFB as an interested party. These facts undermine NTI's insinuation that it is the EEOC's position that the NFB does not have an unconditional right to intervene in this suit.

Because it is a Charging Party with members who are aggrieved persons, the NFB has an unconditional right to intervene pursuant to Rule 24(a)(1).

**II.     This Court should also grant the NFB's motion pursuant to 24(a)(2).**

To intervene as of right under Rule 24(a)(2), the NFB must satisfy four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001) (citation omitted); *see also Sierra Club v. Glickman*, 82 F.3d 106, 108 (5th Cir. 1994). NTI concedes that the NFB's motion is timely. NTI argues, however, that the NFB has failed to satisfy the remaining three requirements.

**A.     The NFB and its members have direct, substantial, and legally protected interests in this lawsuit.**

Rule 24(a)(2) requires that a movant have a "direct, substantial, legally protectable interest in the proceedings." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citation omitted). Here, the NFB and its members—both those who have (like Mr. Sullivan and Ms. Murad) and those who will in the future apply for employment through NTI—have a legally protectable interest in protecting and enforcing their rights to seek employment and accommodations without facing discrimination at the hands of NTI. Such an interest "is of the

type that the law deems worthy of protection," *id.* at 659, and is one that weighs in favor of permitting the NFB to intervene, *see Glickman*, 82 F.3d at 109 (permitting organization's intervention where *its members* had sufficient interest to justify intervention).[2]

### B. The NFB's members' interests would be impaired by non-intervention given the *stare decisis* effect of an adverse judgment.

"The Fifth Circuit has held that the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." *Glickman*, 82 F.3d at 109–10 (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994)); *see also Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 424 (5th Cir. 2002) (quoting *Glickman*, 82 F.3d at 109–10)). In arguing otherwise, NTI relies on a Southern District of Texas case, which quotes a Fifth Circuit case that was decided in 1967. *See* Def. Resp. at 10–11 (citing *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2009 WL 6496504, at *9 (S.D. Tex. Jan. 26, 2009) and *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967)). The Fifth Circuit's decision in *Glickman*, which postdates the Court's decision in *Atlantis*, provides the more recent, relevant analysis on the *stare decisis* issue.

As with the members of the intervening organization in *Glickman*, an adverse judgment "could be relied upon as precedent in suits" brought by the NFB and its members against NTI (particularly if this case is ultimately decided at the appellate level). *Glickman*, 82 F.3d at 110. Therefore, this suit "may, as a practical matter impair or impede" the interests of the NFB and its members. *Id.*; *see also Heaton*, 297 F.3d at 424 (finding that a district court's decision would

---

[2] NTI asserts that *Glickman*'s analysis is inapposite because "[t]he NFB does not claim to have caused the injury of which the EEOC complains." Def. Resp. at 9. Not so. *Glickman*'s analysis provides the blueprint for determining whether an organization can intervene on behalf of its members in the Fifth Circuit. That the organization in *Glickman* sought to intervene as a defendant and the NFB seeks to intervene as a plaintiff is irrelevant. The *Glickman* court did not limit its analysis to cases in which the movant seeks to intervene as a defendant.

4

"undoubtedly . . . be relied upon as precedent in future actions"). The possibility of an adverse judgment that would impair those interests is sufficient to warrant intervention. *Ford*, 242 F.3d at 239 ("(3) the applicant must be so situated that the disposition of the action *may* . . . impair his ability to protect that interest" (emphasis added)).

In its opposition, NTI argues that the NFB does not "explain how *stare decisis* might apply in the future" or how "the NFB as an organization *itself* will be impaired or impeded by an adverse judgment." Def. Resp. at 11. The law does not require the NFB to do so. *See Glickman*, 82 F.3d at 110; *see also Ford*, 242 F.3d at 239. The possibility that an adverse judgment *could be* relied on as precedent in suits involving NFB members is sufficient.

NTI also argues that the NFB members who are aggrieved persons will "be bound by *stare decisis* regardless of whether the NFB is permitted to intervene because they are already purportedly represented by the EEOC." Def. Resp. at 11. Such an argument supports the NFB's position—without intervention, the NFB members may be subject to an adverse judgment without having the opportunity to influence, through the NFB, that judgment. This is the exact scenario intervention is designed to prevent. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) ("The very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions.").

**C.    The EEOC cannot adequately represent the NFB's members' interests.**

To demonstrate inadequate representation, the NFB's members need only "show[] that representation of [their] interest[s] may be inadequate; and the burden of making that showing should be treated as minimal." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (citation omitted). While the EEOC and the NFB have similar claims, they are not identical, as the NFB has explicitly alleged violations of the Americans with Disabilities Act ("ADA) not

5

explicitly alleged by the EEOC. For instance, the NFB alleges that NTI violated the ADA "by participating in contractual or other arrangements or relationships that have the effect of subjecting NTI's own qualified applicants with disabilities to discrimination," ECF No. 3-1 ¶ 55. The EEOC does not. As a result, the EEOC will be unable to fully represent the NFB's members' allegations against NTI. Also, while it is true that the EEOC and the NFB seek similar relief, the relief sought is not identical and there is a possibility that the EEOC, with its public-leaning focus, and the NFB members, with their more individualized focuses, will have divergent views on the amount and form of monetary relief as well as the content and reach of injunctive relief.

In arguing otherwise, NTI points to two presumptions that it asserts the NFB must overcome: the "government-representative" and the "same ultimate objective" presumptions. Here, although the NFB was a Charging Party and the EEOC *could have* brought this case specifically on behalf of the NFB and its members, the EEOC chose not to and is therefore not "a representative of [all of the NFB's members] by law."[3] *Brumfield*, 749 F.3d at 345. In addition, as described above, the interests of the EEOC and the NFB's members do not align precisely and the EEOC has more extensive interests to balance than do the NFB's members. Thus, neither presumption applies. *See Edwards*, 78 F.3d at 1005 (explaining that the "government-representative" presumption only applies when a governmental body or officer is "charged by law with representing the interests of the absentee"); *see also Brumfield*, 749 F.3d at 345 (finding that the "same ultimate objective" presumption did not apply because "[a]lthough both the state and the [movants] vigorously oppose dismantling the voucher program, their interests may not align precisely" and the "state ha[d] more extensive interests to balance than did the [movants]").

---

[3] Having filed this lawsuit, in part, on Mr. Sullivan's behalf, the EEOC is a representative of Mr. Sullivan by law.

Even if the presumptions applied in this case, the NFB can overcome them. The substantive differences in allegations and the likelihood of diverging views on relief noted above are sufficient to overcome the presumptions. *See Texas*, 805 F.3d at 662 ("[I]f the government-representative presumption applies, the intervenor must show that its interest is in fact different from that of the governmental entity and that the interest will not be represented by it." (citation omitted)); *see id.* at 661–62 (explaining that in order to overcome the "same ultimate objective" presumption by showing adversity of interest, "an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case").

The NFB is, therefore, also entitled to mandatory intervention under Rule 24(a)(2).

### III.   Alternatively, the NFB is entitled to permissive intervention.

This Court has broad discretion to grant the NFB permissive intervention if it has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). "The relevant factors to consider are whether the motion was timely, whether the would-be intervenor's claim or defense shares a common question of law or fact with the main action, and whether the intervention will cause undue delay or prejudice." *Student for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021). A court *may* also consider "whether the intervenors' interests are adequately represented by other parties," *Kneeland v. Nat. Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (citation omitted), and "whether intervenors will significantly contribute to full development of the underlying factual issues in the suit," *Am. Stewards of Liberty v. Dep't of the Interior*, No. 1:15-CV-1174-LY, 2016 WL 11272149, at *3 (W.D. Tex. Apr. 26, 2016) (citation omitted).

NTI does not dispute that the NFB's claims are timely or that the NFB's claims share common questions of law and fact with the issues already before this Court. Instead it argues that

7

the NFB's interests are adequately represented, the NFB will not contribute significantly to the suit, and intervention will cause undue delay and prejudice. These arguments are meritless.

As noted, this Court is not *required* to consider the adequacy of representation or contribution to the development of the issues when determining whether to grant permissive intervention. Even if it were, these factors weigh in favor of intervention. As discussed above, the NFB's interests are not adequately represented by the EEOC. *See supra* Section II.C. Additionally, the NFB will significantly contribute to the full development of the underlying factual issues in the suit. Given the NFB's decades-long commitment to ensuring equality in the employment of blind individuals, including through litigation, the NFB has invaluable experience and knowledge regarding the discovery necessary to elicit facts to support the claims (and to refute the defenses) at issue in this case. The strategic insight and access to experts and other witnesses the NFB will bring to this litigation will aid the Court in fully understanding the discriminatory nature of NTI's practices. The value the NFB would add cannot be overstated.

Next, NTI claims it will be prejudiced by intervention because it "will be forced to expend additional untold sums" in discovery, on dispositive motions, and at trial. Def. Resp. at 16. Essentially, NTI argues that any alleged prejudice arises solely from the prospect of having to litigate against the NFB. That a party will have to expend resources to litigate against an intervenor is not a reason to deny permissive intervention. Indeed, whenever an additional party is permitted to intervene, there will presumably be added expense. *See Lelsz v. Kavanaugh*, 710 F.2d 1040, 1045 (5th Cir. 1983) ("In the shortfall the accommodation of additional parties almost invariably . . . makes it more costly."). For this reason, when determining prejudice, courts focus on the timing of the motion to intervene. *See, e.g.*, *Gilyard v. Texas Laurel Ridge Hosp. LP*, No. SA-07-CA-650-OG, 2009 WL 10670038, at *4 (W.D. Tex. Feb. 18, 2009) (holding that

"permissive intervention at the eleventh hour will prejudice the rights of the parties already in the case"); *Student for Fair Admissions, Inc.*, 338 F.R.D. at 372 ("The analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis."); *see also EEOC v. Wellpath, LLC*, No. 5:20-CV-1092-DAE, 2021 WL 4096556, at *2 (W.D. Tex. Mar. 15, 2021). As acknowledged by NTI, the timing of the motion to intervene has no prejudicial effect on NTI. *See* Def. Resp. at 7 ("The NFB's motion is timely.").

NTI also summarily claims that permitting the NFB to intervene "will . . . increase the complexity of this lawsuit and undoubtedly lead to delayed resolution" of the case. Def. Resp. at 16. In so arguing, NTI relies on three Southern District of Texas cases, which involved denials of permissive intervention based on (1) claims consisting of urgent constitutional issues; (2) determinations that the movants' interests were already adequately represented; and/or (3) a concern that permitting intervention would incentivize other parties to seek to intervene. *See Russell v. Harris Cnty., Texas*, No. H-19-226, 2020 WL 6784238, at *4–6 (S.D. Tex. Nov. 18, 2020) (denying motion to intervene where urgent constitutional issues were at issue and the movants' interests were already adequately represented); *The Aransas Project v. Shaw*, No. C-10-75, 2010 WL 2522415, at *14 (S.D. Tex. June 17, 2010) (denying movants' motion where their interests were adequately represented and the court needed to "prevent an overflow of additional attempted interventions"); *Farouk Sys., Inc. v. Costco Wholesale Corp.*, No. 09-cv-3499, 2010 WL 1576690, at *3 (S.D. Tex. Apr. 20, 2010) (similar). The complexity and delay concerns cited in *Russell*, *Shaw*, and *Farouk* are not present here: the claims at issue are not constitutional or urgent in nature; the NFB's interests are not adequately represented by the EEOC; and permitting the NFB to intervene would not result in an influx of interventions.

9

Allowing the NFB to join this case as a plaintiff will not unnecessarily complicate this case. While the NFB's, Mr. Sullivan's, and the EEOC's claims share common questions of law and fact, the NFB does not intend to unnecessarily duplicate the work of the EEOC or delay this case. The NFB will abide by all scheduling orders and will propound discovery requests with the sole purpose of furthering this litigation. NTI's concerns of complexity and delay are unfounded.

This Court should therefore permit the NFB to intervene pursuant to Rule 24(b)(1)(B).

## CONCLUSION

For the foregoing reasons, the NFB respectfully requests that this Court grant it leave to intervene as a plaintiff, that it be permitted to fully participate in this matter, and that this Court grant it (along with Mr. Sullivan) leave to file the Movants' Complaint-in-Intervention.

Dated: December 8, 2023                    Respectfully submitted,

/s/ Brian East

Brian East (TX SBN 06360800)
Ted Evans (*bar admission forthcoming*)
Disability Rights Texas
2222 W. Braker Lane
Austin, Texas 78758
(512) 407-2718 Office
(512) 454-3999 Fax
beast@disabilityrightstx.org
tevans@disabilityrightstx.org

Eve L. Hill (*admitted pro hac vice*)
Anisha S. Queen (*admitted pro hac vice*)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
(410) 962-1030 Office
(410) 385-0869 Fax
ehill@browngold.com
aqueen@browngold.com

***Attorneys for Intervenors-Plaintiffs Roger Sullivan and the National Federation of the Blind***

## CERTIFICATE OF SERVICE

I certify that on December 8, 2023, a copy of the National Federation of the Blind's Reply in Support of its Motion to Intervene was electronically filed with the Court and served via the CM/ECF system upon counsel for Plaintiff and Defendant.

> **Philip Jonathan Moss**
> Equal Employment Opportunity Commission
> San Antonio Field Office
> 5410 Fredericksburg Road, Ste. 200
> San Antonio, TX 78229
> (210) 281-7636
> Fax: (210) 281-2521
> Email: philip.moss@eeoc.gov
>
> **Robert A. Canino**
> U.S. Equal Employment Opportunity Commission
> San Antonio Field Office
> 5410 Fredericksburg Rd. - Ste 200
> San Antonio, TX 78229-3555
> (210) 281-7636
> Fax: (210) 281-7669
> Email: robert.canino@eeoc.gov
>
> **Suzanne M. Anderson**
> Equal Employment Opportunity Commission
> 207 S. Houston Street - 3rd Floor
> Dallas, TX 75202
> 214-253-2740
> Fax: 214-253-2749
> Email: suzanne.anderson@eeoc.gov
>
> **Alexa R Lang**
> Equal Employment Opportunity Commission-Legal Unit
> 207 S Houston Street, 3rd Floor
> Dallas, TX 75202
> 972-918-3589
> Email: alexa.lang@eeoc.gov
>
> *Attorneys for Plaintiff*

and

**Jeremy Hawpe**
Littler Mendelson, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, Tx 75201
(214) 880-8100
Fax: (214) 800-0181
Email: jhawpe@littler.com

**Nicole LeFave**
Littler Mendelson, P.C.
100 Congress Avenue
Suite 1400
Austin, TX 78701
(512) 982-7250
Fax: (512) 982-7248
Email: nlefave@littler.com

**Emily Linn**
Littler Mendelson, P.C.
100 Congress Avenue
Suite 1400
Austin, TX 78701
(512) 982-7250
Fax: (512) 982-7248
Email: elinn@littler.com

*Attorneys for Defendant*

                                                          Brian East (TX SBN 06360800)